## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
## PANEL VI

| MARIO GONZÁLEZ MIRALLI<br><br>Parte Recurrida<br><br><br>v.<br><br><br><br>MENTOR TECHNICAL GROUP, CORP.<br><br>Parte Peticionaria | TA2025CE00933 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br><br>Caso Núm.: CG2023CV02028<br><br>Sala: 802<br><br>Sobre:<br><br>Daños y Perjuicios, Represalias, Despido Injustificado |
| JENNIFER VÁZQUEZ SERRANO<br><br>Parte Recurrida<br><br><br>v.<br><br><br><br>MENTOR TECHNICAL GROUP, CORP.<br><br>Parte Peticionaria | | *Certiorari*, procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br><br>Caso Núm.: CG2023CV02178<br><br>Sala: 802<br><br>Sobre:<br><br>Daños y Perjuicios, Represalias, Despido Injustificado |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de enero de 2026.

Compareció ante este Tribunal la parte peticionaria, Mentor Technical Group, Corp. (en adelante, "Mentor" o "Peticionario"), mediante recurso de *certiorari* presentado el 19 de diciembre de 2025. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, el "TPI"), el 20 de noviembre de 2025 y notificada el 24 del mismo mes y año. A través del aludido dictamen, el TPI declaró

"No Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por el Peticionario.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* ante nuestra consideración y *confirmamos* la *Resolución* recurrida.

**I.**

El caso núm. CG2023CV02028 tuvo su origen el 21 de junio de 2023, con la presentación de una "**Querella**" por parte del Sr. Mario González Miralli (en adelante, el "señor González Miralli") en contra de Mentor por un alegado despido injustificado y represalias bajo el procedimiento dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, mejor conocida como "Ley de Procedimiento Sumario de Reclamaciones Laborales", 32 LPRA sec. 3118 *et seq.* Mediante la misma, expresó que laboró para Mentor desde enero de 2009 hasta mayo de 2023, ocupando los siguientes puestos, a saber: (1) Gerente de Contabilidad, (2) *Comptroller*, (3) Director de Finanzas, (4) Director de Sistemas de Información, (5) Director de *Procurement*, (6) Administrador de Plan de Pensiones y (7) Director Interino de Recursos Humanos.

Relató que, el 12 de mayo de 2023, se reunió con la presidenta de la compañía, la Sra. Flavia Tejada (en adelante, "la señora Tejada"), para analizar los resultados del primer trimestre y las proyecciones al cierre del año. Señaló que durante ese encuentro ella le indicó que debía encontrar la forma de que el cálculo alcanzara la suma de sesenta y cinco (65) millones, aun cuando él ya le había manifestado que las cifras oscilaban entre cincuenta y ocho (58) millones y sesenta (60) millones. Indicó que simultáneamente a lo anterior, para el mes de marzo de 2023 comenzó el programa de "Wellness" que consistía en rutinas de ejercicios conocidas como zumba. Resaltó que dicho programa fue creado y promovido por la señora Tejada. Esbozó que, como parte de sus funciones y en respuesta a las constantes quejas de varios empleados, se acercó al generalista de facilidades, el Sr. Josué Ayala y a la instructora de zumba para solicitarles que moderaran el sonido de la música de zumba.

De igual forma, arguyó que, el 2 de marzo de 2023, le instruyó a la Sra. Jennifer Vázquez Serrano que le ayudara con la solicitud de bajar la música. Argumentó que posterior a ello, notó un cambio en el trato y las exigencias que le imponía Mentor y comenzó a recibir amenazas de despido frente a otros empleados. Afirmó que la señora Tejada le retiró la confianza, creando un ambiente hostil, atropellador y humillante desde marzo de 2023 hasta finales de mayo de 2023 que le entregaron la carta de despido por una presunta restructuración de la compañía. En vista de lo anterior, le peticionó al foro de instancia lo siguiente: (1) una suma no menor de $1,000.000.00 por represalias y (2) una suma no menor de $14,333.33 mensuales por los salarios dejados de devengar desde la fecha en que fue despedido hasta que consiga un salario igual o mayor a ese. En su defecto, solicitó el pago de la mesada bajo la Ley Núm. 80 de 30 de mayo de 1976, *infra*.

Así las cosas, el 27 de julio de 2023, Mentor presentó su "**Contestación a Querella**" en la que rechazó la mayoría de las imputaciones formuladas en su contra y alegó afirmativamente que la empresa había experimentado crecimiento en los últimos años, expandiendo sus operaciones a los Estados Unidos, lo que dio lugar a una diversificación de las funciones y operaciones relacionadas a la contabilidad y finanzas de la organización. Afirmó que, en atención a lo anterior, la compañía tomó la decisión de eliminar la posición del señor González Miralli para contratar firmas especializadas que pudiesen dar un servicio experto, total y comprensivo en dicha área. Así pues, sostuvo que el despido del señor González Miralli fue legítimo y *bona fide* y que obedeció a las necesidades particulares de la compañía. De igual forma, sostuvo que dicha decisión empresarial no obedeció a un subterfugio para justificar el despido del Recurrido.

Ese mismo día, Mentor le peticionó al TPI que el caso se tramitara por la vía ordinaria. Tras la oposición del señor González Miralli y la correspondiente réplica, el 21 de agosto de 2023, el foro primario emitió una *Orden* declarando "Ha Lugar" dicha solicitud.

Por su parte, el 6 de julio de 2023, la Sra. Jennifer Vázquez Serrano (en adelante, la "señora Vázquez Serrano") presentó una "**Querella**" en contra de Mentor por alegadamente haber sido despedida injustificadamente y por represalias bajo el caso núm. CG2023CV02178. A través de esta, sostuvo que trabajó para el Peticionario desde el 4 de febrero de 2013 hasta mayo de 2023 donde ocupó los siguientes puestos: (1) área de facturación, (2) *Project Control*, (3) cuentas a cobrar PR y USA, (4) nóminas E.E.U.U., (5) *Senior Accountant USA* y (6) auditora del Departamento de Calidad. Argumentó que, tras haber presentado múltiples quejas por el alto volumen de la música de zumba en el lugar de trabajo, comenzó un patrón de amenazas y maltrato hacia su persona.

Asimismo, expuso que la señora Tejada la desatendía, no consideraba sus aportaciones y empezó a actuar diferente. Precisó que las acciones humillantes no cesaron desde marzo 2023 hasta el día que le entregaron la carta de despido por una presunta restructuración de Mentor. Alegó que dicha restructuración era un subterfugio para esconder la verdadera razón de su despido. En vista de ello, solicitó: (1) una suma no menor de $500,000.00 por represalias, (2) una suma no menor de $4,586.37 mensuales por los salarios dejados de devengar desde la fecha en que fue despedida hasta que consiga un salario igual o mayor a ese. En respuesta a lo anterior, el 14 de agosto de 2023, Mentor presentó su correspondiente "**Contestación a Querella**" en la cual negó la mayoría de las afirmaciones expuestas en su contra y clarificó que la determinación de eliminar el puesto que ocupaba la señora Vázquez Serrano en el Departamento de Finanzas respondió a la decisión de contratar firmas externas especializadas en el área.

Así las cosas, y tras múltiples trámites procesales, el 26 de julio de 2024, Mentor presentó una "**Moción de Sentencia Sumaria**" mediante la cual sostuvo que no existían hechos materiales en controversia que impidieran la disposición sumaria del caso. En esencia, manifestó que los despidos objeto de la presente controversia se debieron exclusivamente a razones de negocios y nada tuvieron que ver con la participación del señor

González Miralli y la señora Vázquez Serrano en los señalamientos sobre el volumen de la música en las sesiones de zumba. Igualmente, resaltó que un despido propiciado por una restructuración empresarial *bona fide* constituye justa causa para la terminación laboral del empleado. De conformidad con lo anterior, le solicitó al TPI que declarara "Ha Lugar" su petición.

El 14 de julio de 2025, el señor González Miralli y la señora Vázquez Serrano presentaron su "**Oposición a Solicitud de Sentencia Sumaria**" en la que argumentaron que no procedía la disposición sumaria del presente caso, toda vez que subsistían controversias sobre hechos materiales y pertinentes del mismo. En específico, alegaron que, tras sus despidos, Mentor mantuvo empleados con menor antigüedad y/o menor capacidad. Alegaron que el Departamento de Finanzas estaba compuesto por doce (12) empleados y que ellos fueron los únicos en ser despedidos. Plantearon, además, que MACOSS Business Group (en adelante, "MACOSS") ya brindaba servicios a Mentor antes de la alegada reestructuración y que no fue sino hasta casi tres (3) meses después de sus despidos que dicha entidad asumió las funciones que anteriormente desempeñaba el Departamento de Finanzas.

Igualmente, señalaron que Mentor realizaba negocios en los Estados Unidos desde aproximadamente el año 2018 y que el señor González Miralli y la señora Vázquez Serrano habían manejado los asuntos financieros y contributivos de las operaciones fuera de Puerto Rico sin haber recibido quejas ni amonestaciones. Finalmente, indicaron que no se efectuó avalúo ni informe escrito alguno que justificara el propósito de la reestructuración y que, incluso, la contratación de MACOSS resultó económicamente perjudicial para Mentor. En vista de ello, solicitaron que se declarara "No Ha Lugar" la "**Moción de Sentencia Sumaria**".

El 29 de agosto de 2025, Mentor presentó una "**Réplica**" en la que reiteró que una reestructuración corporativa constituye justa causa. De igual manera, sostuvo que no existía nexo causal entre la alegada actividad protegida y los despidos, ya que la reestructuración que los fundamentó fue

considerada con anterioridad a dicha actividad. Añadió que, desde principios de enero y febrero de 2023, la señora Tejada ya había determinado que esa sería la decisión a adoptarse. En consecuencia, solicitó nuevamente que se declarara "Ha Lugar" su "**Moción de Sentencia Sumaria**".

Finalmente, el 24 de noviembre de 2025, el foro de instancia emitió una *Resolución* en la que declaró "No Ha Lugar" la "**Moción de Sentencia Sumaria**". Concluyó que existían controversias sustanciales de hechos en cuanto al momento y las causas de los despidos, la existencia de quejas o amonestaciones y la alegada reestructuración del Departamento de Finanzas, incluyendo su planificación, toma de decisiones, criterios de selección y manejo de las funciones luego de los despidos.

Inconforme con dicha determinación, Mentor presentó el recurso de *certiorari* que nos ocupa y le imputó al foro de instancia la comisión de los siguientes errores:

1. **Erró el TPI al no dictar sentencia sumaria desestimando los casos consolidados.**

2. **Erró el TPI al no aplicar correctamente la "Ley de Transformación y Flexibilidad Laboral" y lo resuelto en *Ortiz Ortiz v. Medtronic*, 209 D.P.R. 759 (2022) a los fines de que el peso de la prueba en un caso bajo la "Ley de Despido Injustificado" recae en el empleado.**

3. **Erró el TPI al no aplicar la doctrina establecida en *Segarra Rivera v. Int'l Shipping*, et al, 208 D.P.R. 964 (2022) que ofrece los criterios adjudicativos en un despido decretado en el conflicto de una reorganización empresarial bona fide.**

4. **Erró el TPI al establecer que la existencia de hechos no materiales impedían el conceder la moción de sentencia sumaria presentada.**

5. **Erró el TPI al decretar que se estableció los elementos de un caso de despido injustificado bajo la Ley 80 y un caso de represalias bajo la Ley 115.**

El 22 de diciembre de 2025, el señor González Miralli y la señora Vázquez Serrano presentaron su "**Oposición a que se Expida el Auto de *Certiorari* y a Moción en Auxilio de Jurisdicción**"

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". Batista Valentín v. Sucn. Batista Valentín, 216 DPR ___; 2025 TSPR 93. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3; Negrón Castro y otros v. Soler Bernardini y otros, 216 DPR ____ (2025); 2025 TSPR 96.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para

prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que

no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos,

cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de P.R, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

**B.**

En nuestro sistema jurídico el contrato de servicios que concretiza una relación obrero-patronal se constituye como el medio principal de sustento para los empleados y sus dependientes. Díaz v. Wyndham Hotel Corp., 155 DPR 364, 374 (2001). Debido a ello, existe un interés estatal apremiante para reglamentar las relaciones obrero-patronales, de forma tal que las mismas se enmarquen en una política pública enfocada en salvaguardar los derechos de los trabajadores. Íd. De conformidad con lo anterior, se incorporó en la Ley Núm. 80, *supra*, el requisito de "justa causa" como medida limitativa en toda causa de acción por despido. Por tanto, nuestra jurisprudencia ha establecido que este estatuto siempre debe ser interpretado de la forma más liberal y favorable al empleado. Jusino *et als.* v. Walgreens, 155 DPR 560, 571 (2001).

Así pues, todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, donde trabaja mediante remuneración de clase alguna, contratado sin tiempo determinado, y que fuere despedido sin justa

causa, tendrá derecho a recibir de su patrono, en adición al sueldo que hubiere devengado, el salario correspondiente a un mes por concepto de indemnización, conocida ésta como la indemnización básica, y "una indemnización progresiva adicional equivalente a una semana por cada año de servicio". Díaz v. Wyndham Hotel Corp., *supra*, pág. 375. Para ser acreedor del remedio y de los beneficios que instituye la Ley Núm. 80, *supra*, el empleado separado de su cargo debe cumplir con los siguientes requisitos: (1) la existencia de una relación obrero-patronal remunerada; (2) que el empleado haya sido contratado por tiempo indeterminado; y (3) que el empleado haya sido despedido sin que medie justa causa. C. Zeno Santiago y otros, Tratado de Derecho del Trabajo, San Juan, Puerto Rico, Publicaciones JTS, 2003, T. I, pág. 98.

Nótese que nuestro ordenamiento jurídico cobija el poder de dirección empresarial, al reconocerles a los patronos el derecho de despedir a sus empleados, por cualquier razón no discriminatoria. Díaz v. Wyndham Hotel Corp., *supra*, pág. 377. Sobre el particular, cabe destacar que las circunstancias que contempla el estatuto en cuanto a lo que se entiende como causa que justifique el despido no son taxativas y que constituye justa causa para el despido aquella que está vinculada a la ordenada marcha y normal funcionamiento de una empresa. Srio. del Trabajo v. G.P. Inds., Inc., 153 DPR 223, 243 (2001).

Es preciso señalar que el ordenamiento jurídico en Puerto Rico no impide los despidos; solamente interpone el requisito de justa causa para ello. En términos generales, el estatuto contempla dos tipos de causales para que el despido de un empleado se considere hecho con justa causa: (1) actuaciones imputables al obrero y de las cuales se entiende que ha provocado su despido; y (2) situaciones no imputables al obrero pero que son de tal naturaleza que su despido resulta prácticamente inevitable.

El Artículo 2 de la Ley Núm. 80, *supra*, establece –en su parte pertinente– que será justa causa para el despido de un empleado lo siguiente:

[…]

TA2025CE00933

> (e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
>
> (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. 32 LPRA sec. 185b.

El Tribunal Supremo ha resuelto que "[l]ey no pretende ni puede […] ser un código de conducta conteniendo una lista de faltas claramente definidas y la sanción que corresponde a cada una y en cada instancia, si ha de ser reprimenda, suspensión o despido". Srio. del Trabajo v. I.T.T., 108 DPR 536, 542 (1979). El concepto de "justa causa" "es dinámico, puesto que se nutre de múltiples y fluidas situaciones imposibles de prever". Srio. del Trabajo v. G.P. Inds., Inc., *supra*, pág. 243.

El referido Artículo 2 de la Ley Núm. 80, *supra*, no pretende, ni puede, considerada la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una y en cada instancia. Srio. del Trabajo v. I.T.T., *supra*, pág. 542. Para propósitos de aplicar las diferentes leyes protectoras del trabajador, el Tribunal Supremo ha utilizado, a manera de referencia, y sin ser exhaustivo y en forma orientadora, las enumeradas en el Artículo 2 de la Ley Núm. 80 como causas justificadas para el despido. Rivera Águila v. K-Mart de P.R., 123 DPR 599, 610 (1989); Báez García v. Cooper Labs., Inc., 120 DPR 145, 151-152 (1987).

Es norma firmemente establecida en nuestra jurisdicción que no es justa causa para despedir a un empleado aquélla fundada en el libre arbitrio o capricho del patrono, sino que las motivaciones del despido estén relacionadas con el buen funcionamiento de la empresa concernida. León Torres v. Rivera Lebrón, 204 DPR 20, 37 (2020). Ahora bien, la Ley Núm. 80, *supra*, no prohíbe el despido de un empleado, sino que "[d]icho curso de acción como tal se reconoce como una facultad o derecho que ostenta todo patrono en una sociedad moderna que se desarrolla y desenvuelve

alrededor y a base de las fuerzas del libre mercado y del derecho de propiedad o de dirección empresarial". Díaz v. Wyndham Hotel Corp., *supra*, pág. 377. Si existe justa causa, el empleado puede ser despedido. Santiago v. Kodak Caribbean, Ltd., 129 DPR 763, 775 (1992). Si se establece que el despido se efectuó sin causa justificada, el tribunal el afectado tiene como único remedio la mesada. Díaz v. Wyndham Hotel Corp., *supra*, pág. 378.

Por su parte, el Artículo 3 de la Ley Núm. 80, *supra*, establece lo siguiente:

> En cualquier caso en que se despidiesen empleados por las razones indicadas en los incisos (d), (e) y (f) del Artículo 2 de esta Ley, el patrono estará obligado a retener con preferencia en el empleo a los empleados de más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos, entendiéndose que se dará preferencia a los empleados despedidos en caso de que dentro de los seis (6) meses siguientes a su cesantía tuviere necesidad de emplear a una persona en labores iguales o similares a las que desempeñaban dichos empleados al momento de su despido y dentro de su clasificación ocupacional, siguiéndose también el orden de antigüedad en la reposición. 32 LPRA sec. 185c.

Así pues, se considera justa causa para el despido la que tiene su origen, no ya en el libre arbitrio del patrono, sino en razón vinculada a la ordenada marcha y normal funcionamiento de la empresa. Srio. del Trabajo v. I.T.T., *supra*, pág. 543.

> Por lo tanto, las empresas pueden cesantear a sus empleados sin la obligación de pagar la correspondiente indemnización cuando enfrentan alguna de las precitadas circunstancias. La única limitación que impone la ley en este tipo de casos es la de "retener con preferencia en el empleo al empleado con más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos". Sin embargo, la retención por antigüedad tiene que ser dentro de la misma clasificación ocupacional y no entre clasificaciones ocupacionales distintas. Segarra Rivera v. Int'l. Shipping *et al.*, 208 DPR 964, 984-985 (2022) (citas omitidas).

En Zapata Berríos, *et al.* v. J.F. Montalvo Cash & Carry, Inc., 189 DPR 414 (2012), el Tribunal Supremo estableció que en circunstancias en las que el despido del empleado ocurre por razones económicas vinculadas a la operación de la empresa, un patrono puede cambiar su forma de llevar a cabo los negocios mediante algún tipo de cambio enfocado en la optimización de sus recursos y aumento de las ganancias, "ya sea

eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad, siempre que responda a una restructuración *bona fide*". Zapata Berríos, *et al.* v. J.F. Montalvo Cash & Carry, Inc., *supra*, pág. 426. Igualmente, el patrono está facultado en ley para paliar una situación económica precaria provocada por una merma en ganancias y limitar los gastos mediante la reducción de la plantilla de empleados. Íd.

De particular relevancia resultan los pronunciamientos del Tribunal Supremo en Zapata Berríos, *et al.* v. J.F. Montalvo Cash & Carry, Inc., *supra*, reiterados en *Segarra Rivera*, a los efectos de que "la situación económica provocada por la baja en la producción, ventas o ganancias en una empresa puede llevar al patrono a tomar medidas necesarias para limitar los gastos tales como disminuir la plantilla laboral". Zapata Berríos, *et al.* v. J.F. Montalvo Cash & Carry, Inc., *supra*, pág. 427 (énfasis suplido).

Conforme hemos adelantado, como parte del proceso de despidos correspondiente a los casos provistos en los incisos (d), (e) y (f) del Artículo 2 de la Ley Núm. 80, *supra*, se le requiere a la empresa retener a los empleados de mayor antigüedad condicionado a que "subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos …." Art. 3 de la Ley Núm. 80, *supra*, 29 LPRA sec. 185c. "Claro está, lo anterior será de este modo, siempre y cuando el empleado de más tiempo en la empresa cuente con las destrezas necesarias para realizar las tareas asociadas con el puesto que pasa a ocupar, o que pueda adiestrarse para realizarlas en un tiempo corto y a un costo mínimo." Zapata Berríos, *et al.* v. J.F. Montalvo Cash & Carry, Inc., *supra*, pág. 428. Ahora bien, el Tribunal Supremo resolvió en *Segarra Rivera* que

> [P]ara demostrar justa causa **basta con articular y presentar prueba sobre una razón válida para el despido,** como por ejemplo sería la **reorganización empresarial** de los servicios rendidos al público. En ese sentido, **la obligación que impone la Ley Núm. 80,** *supra,* **de probar efectivamente el proceso de reestructuración, no está sujeta a que se acredite la existencia de un proceso o plan de reestructuración de una forma** *particular o específica.* O sea, basta con que el patrono demuestre que la acción **respondió a una decisión gerencial válida** a la luz de las

circunstancias y que no obedeció a un mero capricho o arbitrariedad, y así ***tendrá que acreditarlo***. Segarra Rivera v. International Shipping Agency, *supra*, pág. 1002 (énfasis en el original).

Resultan de particular importancia las expresiones de nuestro más alto foro judicial al analizar los despidos cuando media una reorganización. A esos efectos, se concluyó lo siguiente:

> **[B]ajo la teoría de reorganización empresarial**, la empresa **no necesariamente tiene que alegar y probar que tuvo problemas económicos**, sino que el patrono **tiene que probar** que, en efecto, **se realizó una reorganización de buena fe,** y que, como parte de ese plan, el empleado fue despedido. Es decir, al argumentar como "justa causa" una reestructuración, lo que el patrono debe demostrar es que la acción de modificar su manera de hacer negocios se hizo en consideración al buen y normal funcionamiento del establecimiento. Pues, el concepto justa causa está arraigado a consideraciones que atañen al manejo de la empresa. En ese sentido, como correctamente establecimos en SLG Zapata v. JF Montalvo, *supra*, no es función de los tribunales administrar los negocios ni aconsejar a los directores de estos cómo manejar los asuntos de su empresa, siempre y cuando estas decisiones no estén motivadas por razones discriminatorias ni que mucho menos sean producto del mero capricho del patrono. Íd., págs. 1002-1003 (énfasis en el original y énfasis suplido).

**III.**

En el presente caso, Mentor nos solicitó la revocación de la *Resolución* del TPI en la que se declaró "No Ha Lugar" la "**Moción de Sentencia Sumaria**".

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo que se abordarán de forma conjunta en la discusión. En síntesis, el Peticionario sostiene que el TPI erró al: (1) no dictar sentencia sumaria desestimando los casos consolidados, (2) no aplicar correctamente la Ley Núm. 80, *supra*, (3) no aplicar la doctrina establecida en Segarra Rivera v. International Shipping Agency, *supra*, (4) establecer que la existencia de hechos no materiales impedía el conceder la "**Moción de Sentencia Sumaria**" y al (5) decretar que se establecieron los elementos de un caso de despido injustificado y represalias. Veamos.

Según adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el

foro *a quo*. Del análisis de la prueba que se presentó ante el TPI, determinamos que sobre los siguientes hechos esenciales y pertinentes no existe controversia:

1. El señor González Miralli inició su relación laboral con Mentor como contratista en el año 2007 y pasó a ser empleado regular en 2009, desempeñando diversas posiciones hasta mayo de 2023. Comenzó ocupando el puesto de *Comptroller* y, posteriormente, el 2 de enero de 2017 asumió el cargo de Director de Finanzas, función desde la cual tuvo a su cargo el área de *Information Technology*, así como el área de *Procurement*, la cual reportaba al Departamento de Finanzas. Además, ejerció como Administrador del Plan de Pensiones.

2. La señora Vázquez Serrano comenzó a trabajar para Mentor el 4 de febrero de 2013 como contratista independiente y pasó a ser empleada regular el 24 de febrero de 2014. Inició en el área de facturación y posteriormente ocupó los puestos de *Project Control Specialist* I, II y III, sin haber desempeñado nunca el cargo de *Payroll Specialist*.

3. Como parte del programa de *Wellness*, Mentor comenzó a ofrecer clases de zumba a sus empleados.

4. El 2 de marzo de 2023, varias empleadas del área administrativa se encontraban reunidas elaborando un plan de trabajo para completar el cierre del año 2022.

5. En ese momento del día, se llevaban a cabo clases de Zumba en el área del almacén como parte del programa de *Wellness* de Mentor.

6. La señora Tejada asistía y se involucraba activamente en las clases de Zumba.

7. En ese momento, el señor González Miralli solicitó a la señora Vázquez Serrano que le enviara un mensaje de texto a la persona encargada de ofrecer las clases de Zumba.

8. La señora Vázquez Serrano envió el mensaje a través de la aplicación *WhatsApp*; sin embargo, este no fue visto de inmediato debido a que el teléfono se utilizaba para reproducir la música.

9. Ante esa situación, la señora Vázquez Serrano envió un correo electrónico al Departamento de Recursos Humanos solicitando que se interviniera por el volumen elevado de la música durante la clase.

10. Posteriormente, el volumen fue reducido y Recursos Humanos confirmó que la situación había sido atendida.

11. El 12 de mayo de 2023, previo a su despido, el señor González Miralli sostuvo una reunión con la señora Tejada para evaluar los resultados financieros del primer trimestre y las proyecciones al cierre del año.

12. La señora Tejada admitió bajo juramento que el señor González Miralli logró resultados financieros multimillonarios para Mentor.

13. No se llevó a cabo una investigación sobre quiénes participaron o trabajaron en determinados proyectos.

14. La decisión de despedir al señor González Miralli y a la señora Vázquez Serrano fue tomada por la Presidenta de Mentor, la señora Tejada.

15. La evaluación de las capacidades del señor González Miralli y la señora Vázquez Serrano fue realizada únicamente por la señora Tejada.

16. Dicha evaluación se limitó exclusivamente a las capacidades internas de los del señor González Miralli y de la señora Vázquez Serrano.

17. No se realizaron evaluaciones de desempeño del señor González Miralli ni de la señora Vázquez Serrano antes de recomendar sus despidos.

18. Los estados financieros auditados de Mentor no reflejaron señalamientos críticos.

19. No existe un informe escrito relacionado con la evaluación de la antigüedad de los empleados.

20. Era práctica usual de Mentor ofrecer planes de mejora o *Performance Improvement Plan*.

21. Las evaluaciones de desempeño del señor González Miralli y la señora Vázquez Serrano eran excelentes.

22. No se les ofreció un plan de mejora (*performance improvement plan*) previo a sus despidos.

23. El Departamento de Finanzas estaba compuesto por doce (12) empleados y únicamente el señor González Miralli y la señora Vázquez Serrano fueron despedidos como parte del alegado proceso de reestructuración de la empresa.

24. Desde el año 2022, la señora Vázquez Serrano no tenía a su cargo las cuentas por cobrar.

25. No se consideró la posibilidad de reubicar al señor González Miralli en el área de Recursos Humanos.

26. El señor González Miralli indicó que nunca se le ofrecieron formalmente alternativas de reubicación en puestos disponibles para los cuales estaba capacitado.

27. La compañía externa contratada para asumir las funciones del Departamento de Finanzas comenzó a prestar servicios varios meses después de los despidos.

28. Las propuestas recibidas fueron evaluadas y se seleccionó a la compañía favorecida del proceso.

29. Dicha compañía ya ofrecía servicios a Mentor con anterioridad a la presunta reestructuración.

30. Al señor González Miralli tampoco se le ofreció una posición alterna.

31. En junio de 2023, se reclutó una Gerente de Compras, puesto distinto a los ocupados por el señor González Miralli y la señora Vázquez Serrano al momento de sus despidos.

32. Tras los despidos, se implantó un modelo de *outsourcing* en el Departamento de Finanzas.

33. Las funciones que realizaba la señora Vázquez Serrano pasaron a ser desempeñadas por la compañía externa.

Establecido lo anterior, nos dirigimos a analizar los señalamientos de error esgrimidos. En resumidas cuentas, Mentor sostiene que la retención o el reempleo preferente a base de antigüedad debe hacerse dentro de la misma clasificación ocupacional y no entre clasificaciones ocupacionales diferentes. Asimismo, arguye que la reestructuración efectuada por el Peticionario fue llevada a cabo de manera *bona fide* y no el producto de un mero capricho de Mentor. De igual forma, alega que los despidos en controversia fueron por justa causa relacionada a razones de negocios y nada tuvo que ver con la participación del señor González Miralli y la señora Vázquez Serrano en los señalamientos sobre el volumen de la música en las sesiones de Zumba.

Conforme adelantáramos en los acápites anteriores, en nuestro ordenamiento jurídico procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a hechos esenciales y pertinentes del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, supra, pág. 679. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Íd., pág. 678. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Tras analizar detenida y comprensivamente los documentos que obran en el expediente, incluyendo las *Querellas,* la "**Solicitud de Sentencia Sumaria**, su correspondiente *Oposición,* la *Réplica y* los documentos anejados a dichas mociones, hemos arribado a la conclusión

de que el TPI actuó correctamente al no disponer del caso por la vía sumaria. Nos explicamos.

De entrada, es menester destacar que subsisten controversias sustanciales respecto al momento en que se adoptó la decisión patronal y las razones que sirvieron de fundamento para los despidos del señor González Miralli y de la señora Vázquez Serrano, asuntos que resultan determinantes para evaluar la alegada justa causa y más allá de una mera alegación o expresión por parte de los oficiales de la empresa de que dichas terminaciones se efectuaron como parte de una reestructuración de la empresa por su crecimiento durante los últimos años.

En particular, consta en autos que el señor González Miralli y la señora Vázquez Serrano mantenían una relación laboral prolongada con Mentor y ocupaban posiciones de gran responsabilidad dentro del Departamento de Finanzas. Además, el expediente devela que no existen amonestaciones, evaluaciones de desempeño adversas ni análisis escritos relacionados con la antigüedad o con posibles alternativas de reubicación previos a sus despidos, a pesar de que tales mecanismos formaban parte de las prácticas usuales de la empresa. Asimismo, tampoco existe documento alguno que demuestre que los trabajadores de epígrafe carecían de las aptitudes necesarias para continuar ejerciendo sus labores, tras la decisión de reestructurar los servicios del Departamento de Finanzas.

De igual forma, el récord no permite concluir de manera incontrovertible que la alegada reestructuración del Departamento de Finanzas haya sido el resultado de un proceso planificado y articulado conforme a criterios objetivos. En efecto, permanece controvertido que, de un total de doce (12) empleados, únicamente el señor González Miralli y la señora Vázquez Serrano fueran cesanteados, así como la ausencia de documentación que evidencie los criterios de selección y el manejo de las funciones del Departamento con posterioridad a los despidos. Además, el hecho de que la compañía externa seleccionada para asumir dichas funciones comenzara a prestar servicios varios meses después de los despidos, aun cuando mantenía vínculos contractuales previos con Mentor,

plantea interrogantes adicionales que requieren la aquilatación de la prueba ante el foro de instancia.

Así pues, acogemos como nuestros los hechos materiales y pertinentes que el TPI enumeró en la *Resolución* recurrida sobre los cuales sí existe controversia. El análisis comprensivo de los documentos que obran en autos nos conduce a la conclusión de que Mentor no demostró, por vía de su solicitud de sentencia sumaria, que la acción de modificar su manera de operar el Departamento de Finanzas se hizo en consideración al buen y normal funcionamiento del establecimiento. Simplemente, su petición de disposición sumaria del caso se fundamentó en meras alegaciones o expresiones efectuadas en las deposiciones, mas no se aportó ningún otro documento que sustentara las mismas. En ausencia de dicha documentación adicional, no existe otro curso de acción que denegar la "**Moción de Sentencia Sumaria**". La realidad fáctica y jurídica del caso requiere que la juzgadora de instancia evalúe la prueba testifical y le dé el peso probatorio que entienda pertinente. Ciertamente, no surge con certeza el alegado proceso de reestructuración del Departamento de Finanzas ni la razón y/o justificación para el despido de González y de Vázquez por parte de la señora Tejada.

Con dicha conclusión no ignoramos que en este tipo de circunstancias el concepto justa causa está arraigado a consideraciones que atañen al manejo de la empresa. Ahora bien, **a esta etapa de los procedimientos**, albergamos dudas sobre si los despidos en controversia se efectuaron por motivaciones discriminatorias o si fueron producto del mero capricho del patrono.

En suma, la adjudicación de estas controversias requiere la ponderación de la prueba y la apreciación de la credibilidad de los testimonios, tareas propias de la juzgadora de instancia y ajenas al mecanismo de la sentencia sumaria. En consecuencia, concordamos con el foro de instancia en que procedía declarar "No Ha Lugar" la "**Moción de Sentencia Sumaria**".

**IV**.

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *expedimos* el recurso de *certiorari* ante nuestra consideración y *confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones